UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. PULASKEY,

　　　　Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

　　　　Defendant.

Case No. 20-cv-12658
Honorable Stephanie Dawkins Davis
Magistrate Judge Elizabeth A. Stafford

---

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT [ECF NOS. 17, 19]**

---

Plaintiff Michael J. Pulaskey appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge (ALJ) erred in failing to submit Pulaskey's interrogatories to Dr. Lazzara to question his post-hearing medical report, and thus **RECOMMENDS** that:

- Pulaskey's motion, ECF No. 17, be **GRANTED**;

- the Commissioner's motion, ECF No. 19, be **DENIED**; and

- that the matter be **REMANDED** under sentence four of 42

  U.S.C. § 405(g) for further consideration consistent with this

  report and recommendation.

## I.   Background

### A. Pulaskey's Background and Disability Applications

Born in February 1966, Pulaskey was 50 years old when he applied

for DIB in March 2018, with an alleged amended disability onset date of

December 27, 2017.  ECF No. 13, PageID.56-57, 61, 213.  He had past

relevant work as a "retail store manager."  *Id.*, PageID.61.  Pulaskey

claimed disability from severe lumbar pain and spasm and grand mal

seizures.  *Id.*, PageID.58, 218.

Pulaskey's March 2018 application was not his first request for

disability benefits; ALJ Joy Turner denied his application for DIB in May

2015 after she found that Pulaskey had severe impairments of spine

disorder and seizure disorder but was not disabled.  ECF No. 13,

PageID.93-101.

For the current application, ALJ Elias Xenos held a hearing in July

2019.  ECF No. 13, PageID.54.  After the hearing, during which Pulaskey

and a vocational expert (VE) testified, the ALJ ordered a consultative

examination for Pulaskey, which occurred in August 2019.  *Id.*, PageID.59,

88-89.  The ALJ then found Pulaskey not disabled.  *Id.*, PageID.54-62, 66-89.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.51-53.  Pulaskey timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or he will be found not disabled.  20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

*Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or he can still do past relevant work.  *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Pulaskey was not disabled.  At the first step, he found that Pulaskey had not engaged in substantial gainful activity since the alleged onset date of December 27, 2017.  ECF No. 13, PageID.57.  At the second step, he found that Pulaskey had the severe impairments of disorders of the spine, seizures, and hypertension.  *Id*.  Next, the ALJ concluded that none of Pulaskey's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  *Id*.

Between the third and fourth steps, the ALJ found that Pulaskey had

the RFC to perform a range of light work,[2] with the restrictions of

> never climbing of stairs, ladders, ropes, or scaffolds; occasional
> climbing of ramps; never balancing, crawling or kneeling;
> occasionally stooping and crouching; may never operate
> commercial motor vehicles, trucks, or industrial moving
> equipment; may never work around unprotected heights or
> hazardous machinery; may never have concentrated exposure
> to vibration or extreme cold; requires the ability to alternate
> between sitting or standing every 10 minutes; the claimant
> would be off-task 10% of the workday over and above normally
> scheduled breaks; limited to low-stress jobs, defined as having
> no fast-paced production or hazardous conditions, and few, if
> any workplace changes.

*Id*.  At step four, the ALJ found that Pulaskey cannot perform any past

relevant work as a "retail store manager."  *Id.*, PageID.61.  At the final step,

after considering Pulaskey's age, education, work experience, RFC, and

the testimony of the VE, the ALJ determined that there were jobs in

significant numbers that Pulaskey could perform, including positions as

inspector and hand packager, scrap sorter, and electrical accessories

assembler.  *Id.*, PageID.62.

---

[2] Light work is defined "as lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds….[A] job is
in this category when it requires a good deal of walking or standing…[and]
when it involves sitting most of the time but with some pushing and pulling
of arm-hand or leg-foot controls[.]"  Social Security Ruling (SSR) 83-10,
1983 WL 31251 (1983).

## II.    Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Pulaskey asserts that the ALJ erred by failing to allow him to question the consultative examiner and failing to fully develop the record.  ECF No. 17, PageID.347.  He also argues that the ALJ erred by failing to properly consider and weigh the objective medical opinions of his treating physician.  *Id.*, PageID.350.  The Court agrees with Pulaskey that remand for a new hearing is warranted because the ALJ failed to submit interrogatories to the consultative examiner.

6

**B.**

Pulaskey argues that the ALJ committed reversible error by failing to submit two questions to the consultative examiner, R. Scott Lazzara, M.D. ECF No. 17, PageID.347-349.  The Court agrees.

After the July 2019 hearing, Pulaskey had a consultative examination with Dr. Lazzara, who submitted a medical report to the ALJ.  *Id.*, PageID.347; ECF No. 13, PageID.316-326.  Under the relevant procedures of the Hearing, Appeals, and Litigation Law Manual (HALLEX), the ALJ had to provide Pulaskey with the post-hearing consultative examination report and give him a "[a] time limit to submit written questions to the author(s) or the proffered evidence."  § I-2-7-1(B), Note[3]; § I-2-7-30(A)[4]; ECF No. 17, PageID.362-363.  The ALJ complied with that procedure by forwarding the medical report to Pulaskey and informing him that he had "a right" to "submit written questions to be sent to the author(s) of the new evidence." ECF No. 17, PageID.362.

---

[3] https://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-1.html (last viewed February 4, 2022)

[4] https://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-30.html (last viewed February 4, 2022)

Pulaskey then submitted two questions for the ALJ to send to Dr. Lazzara.  ECF No. 13, PageID.261-262.  After receiving those questions, the ALJ had to submit them to Dr. Lazzara.  § I-2-7-1(B), Note; § I-2-5-44(B)[5] ("An ALJ must allow the claimant or appointed representative to propose additional interrogatories to the ME or request a supplemental hearing to question the ME.").  But, as conceded by the Commissioner, the ALJ never sent the questions to Dr. Lazzara.  ECF No. 19, PageID.378. The ALJ did not address Pulaskey's request for interrogatories in his decision, yet he relied in part on Dr. Lazzara's medical opinion in denying Pulaskey's claim for disability benefits.  ECF No. 13, PageID.59.

The HALLEX procedures are "not binding on this Court."  *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008).  Thus, the ALJ's failure to follow HALLEX procedures is not itself a basis for remand. Instead, "district courts that have granted relief for failure to comply with HALLEX have required that the plaintiff demonstrate prejudice from the failure to follow the procedures."  *Creech v. Comm'r of Soc. Sec.*, 581 F. App'x 519, 521 (6th Cir. 2014).  The Commissioner concedes that the ALJ violated the HALLEX procedures but argues that Pulaskey cannot show any prejudice because his interrogatories were deficient and the ALJ did

---

[5] https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-44.html

not rely mainly on Dr. Lazzara's opinions.  ECF No. 19, PageID.377-380.
The Court disagrees and finds that the ALJ's error was not harmless.

The first interrogatory asked Dr. Lazzara whether he agrees with
Pulaskey's treating physician, Ali Khan, M.D., that he would likely miss "at
least 3 days in a 30 day work period."  ECF No. 13, PageID.262.  But as
pointed out by the Commissioner, Dr. Khan actually contended that
Pulaskey would miss 20 days of work per month.  ECF No. 19,
PageID.378-379; ECF No. 13, PageID.310.  In any event, the VE testified
that an employer would tolerate absenteeism of no more than "[o]ne time
per month consistently."  ECF No. 20, PageID.389; ECF No. 13,
PageID.87.  Thus, Dr. Lazzara's opinion about how often Pulaskey would
likely be absent is relevant to whether he could perform the jobs identified.
*See Montgomery v. Berryhill*, No. 4:17 CV 1207 CDP, 2018 WL 3971949,
at *4 (E.D. Mo. Aug. 20, 2018) ("Questions regarding absenteeism are
directly relevant to determining [plaintiff]'s ability to function full-time in the
workplace…especially considering the [VE]'s hearing testimony that a
person could not maintain employment if they had six work-absences in a
year or one absence in a thirty-day period within consecutive months.").

The second interrogatory Pulaskey posed was if Dr. Lazzara
concurred with Dr. Khan that Pulaskey "would need to take unscheduled

rest breaks during the day to help manage his pain" and if that is "consistent with [Dr. Lazzara's] opinion of continued activity as tolerated." ECF No. 13, PageID.262.  The Commissioner argues that Dr. Lazzara's existing statements are enough to answer the question.  Dr. Lazzara found that Pulaskey could sit, stand, or walk for one hour each without interruption and that he could sit, stand, or walk for four hours each during an eight-hour day.  ECF No. 19, PageID.379-380 (citing ECF No. 13, PageID.317, 321).  The Commissioner contends that, "after receiving an opportunity to identify any other limitations—such as lying down, reclining, or resting every 2 hours, as Dr. Khan had opined—Dr. Lazzara did not identify any such limitations."  ECF No. 19, PageID.379 (citing ECF No. 13, PageID.321).

But the page the Commissioner cites did not ask Dr. Lazzara to identify other limitations.  Instead, an unanswered questioned asked Dr. Lazzara to "state any other work-related activities, which are affected by any impairments, and indicate how the activities are affected."  ECF No. 13, PageID.321.  No question on the questionnaire addressed whether Pulaskey would need rest breaks.  ECF No. 13, PageID.317-321.  And Dr. Lazzara's response to the interrogatory would be germane to whether Pulaskey could perform the jobs the VE identified.  The VE testified that if

Pulaskey needed to "lay down about three times a day for 30 minutes or on an unscheduled basis"—as Dr. Khan opined—then "[t]hat would eliminate the jobs."  ECF No. 13, PageID.86-87.

To support the argument that the ALJ's error was harmless, the Commissioner also argues that the ALJ "did not rely solely, or even primarily, on Dr. Lazzara's opinions" and instead relied on the 2018 lumbar MRI and x-rays from 2017.  ECF No. 19, PageID.380.  But the suggestion that Dr. Lazzara's opinions were unimportant conflicts with the ALJ's reasons for ordering the consultative examination.  The ALJ said during the hearing that there were "pretty limited medical records" and that the ordered report from a consultative examiner would "enable [him] to make a better quality decision."  ECF No. 13, PageID.88.

And in his decision, the ALJ compared Dr. Khan's observations in 2018 about Pulaskey's muscle spasms, positive straight leg raising, and orthopedic maneuvers with those of Dr. Lazzara, finding that Pulaskey improved.  *Id.*, PageID.60.  The ALJ stated that, "as anticipated by Dr. Khan, [Pulaskey] improved" over the year between Dr. Khan's evaluation and Dr. Lazzara's examination.  *Id.*  Based on this improvement, the ALJ concluded that Pulaskey could perform light work and was not disabled.  *Id.*, PageID.61.

Thus, the matter should be remanded so that the ALJ may submit the proffered interrogatories to Dr. Lazzara, obtain Pulaskey's comments or objections to the post-hearing evidence responses, and conduct further proceedings as necessary.

## C.

The Court finds that Pulaskey's other arguments lack merit.  He contends that the ALJ's assessment of his RFC failed to properly consider and weigh the objective medical findings and Dr. Khan's opinion.  ECF No. 17, PageID.350.  In addressing these arguments, the Court is mindful that it lacks the authority to independently weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (citations omitted).  In the same vein, "It is the ALJ's place, and not the reviewing court's, to 'resolve conflicts in evidence.'"  *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663,

12

670 (6th Cir. 2009) (quoting *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)).

Pulaskey's arguments about how ALJ Xenos weighed the evidence conflict with this Court's limited role. ECF No. 17, PageID.350-357. He argues that the ALJ failed to properly consider objective finds and that the assessed RFC contradicts the medical evidence that Pulaskey's symptoms worsened since ALJ Joy's decision. ECF No. 350-353. None of these arguments suggest that ALJ Xenos abused his wide discretion.

Pulaskey complains that the ALJ "provide[d] no clear rationale why he adopt[ed] some of Dr. Khan's medical restrictions while completely rejecting others." ECF No. 17, PageID.354-355. But the ALJ did explain his reasoning. Citing Dr. Lazzara's examination that occurred over a year after Dr. Khan's, the ALJ noted that Pulaskey could "sit, stand or walk for hour at a time and four hours each total in an 8-hour workday." ECF No. 13, PageID.59, 317. The ALJ said that, "as anticipated by Dr. Khan, [Pulaskey] improved" over the year between Dr. Khan's evaluation and Dr. Lazzara's examination. *Id.*, PageID.60. And even though Dr. Khan was Pulaskey's treating physician, the ALJ did not have to defer to his opinion. 20 C.F.R. § 416.920c(a); *Wolfe v. Comm'r of Soc. Sec.*, 16-13620, 2017

WL 6627044, at *7 n.4 (E.D. Mich. Nov. 26, 2017), *adopted*, 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017).

Pulaskey contends that the ALJ should have provided "rationale why he did not consider if [Pulaskey] would have been entitled to a closed period of disability benefits for that time period prior to his alleged improvement."  ECF No. 17, PageID.355.  This argument lacks merit because Pulaskey did not request the ALJ to consider a closed period of disability.  *See Hein v. Saul*, Civ. No., 2019 WL 4509381, at * 6 (M.D. Fla. Sept. 19, 2019) ("A claimant's failure to request consideration of a closed period of disability precludes the claimant from arguing on appeal to the district court that the ALJ erred by failing to consider the same."); *Ward v. Kijakazi*, No. CV 20-1315, 2021 WL 3037711, at *2 (W.D. Pa. July 19, 2021) (finding "that the ALJ did not err in failing to explicitly address a closed period of disability when that request was not made before the ALJ").

Pulaskey's complaint that the RFC assessment for a limited range of light work conflicts with both Dr. Khan and Dr. Lazzara's assessments is also unsustainable.  ECF No. 17, PageID.357.  "[A] full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251 (1983).  Pulaskey

argues that Dr. Lazzara's opinion suggests that he could not perform light work, but the Court is not sure if that conclusion is true.  Dr. Lazzara checked a box stating that Pulaskey could stand for four hours, and a separate box stating that he could walk for four hours.  ECF No. 13, PageID.317.  The Court cannot be sure that Dr. Lazzara meant that Pulaskey could stand *or* walk for a combined total of four hours in a workday, or whether he considered standing and walking to be separate categories.  If Dr. Lazzara's opinion treated standing and walking as separate categories, and he believed that Pulaskey could perform both activities for four hours each, the opinion would match the definition of light work under SSR 83-10.

Even if Dr. Lazzara's opinion failed to align with light work, the Court cannot conclude that the ALJ committed reversible error because an ALJ need not "adopt all opined limitations, even if he finds the opinion persuasive." *Borger v. Comm'r of Soc. Sec.*, 2021 WL 6297536, at *9 (N.D. Ohio Dec. 17, 2021) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (Even when assigning pieces of evidence significant weight, the ALJ does not have to adopt any RFC determinations

verbatim).  So the ALJ's assessment that Pulaskey could perform a limited range of light work even if Dr. Lazzara found otherwise.

The Court finds no merit to Pulaskey's substantial-evidence arguments.

### III.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Pulaskey's motion, ECF No. 17, be **GRANTED;** that the Commissioner's motion, ECF No. 19, be **DENIED**; and that the matter be **REMANDED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 4, 2022

<u>**NOTICE TO THE PARTIES ABOUT OBJECTIONS**</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 4, 2022.

s/Marlena Williams_____
MARLENA WILLIAMS
Case Manager